# Exhibit 4

```
                                                                    1

         UNITED STATES DISTRICT COURT
         EASTERN DISTRICT OF NEW YORK
   - - - - - - - - - - - - - - - -X
   MORRIS MANOPLA,                 :
                                   :19-CV-00992 (BMC)
            Plaintiff,             :
                                   :
                                   :
       -against-                   :United States Courthouse
                                   :Brooklyn, New York
                                   :
                                   :April 10, 2019
   EXPERIAN, et al.,               :10:00 a.m.
                                   :
            Defendants.            :
                                   :
                                   :
   - - - - - - - - - - - - - - - -X

       TRANSCRIPT OF CIVIL CAUSE FOR PRE-MOTION CONFERENCE
              BEFORE THE HONORABLE BRIAN M. COGAN
                UNITED STATES DISTRICT COURT JUDGE


                    A P P E A R A N C E S:

   For the Plaintiff:    EDWARD B. GELLER, ESQ., P.C.
                         15 Landing Way
                         Bronx, NY 10464
                         BY:EDWARD B. GELLER, ESQ.

   For the Defendant     JONES DAY
   Experian:             250 Vesey Street
                         New York, NY 10281
                         BY:KERIANNE TOBITSCH, ESQ.

   For the Defendant     CLARK HILL PLC
   Equifax Information      210 Carnegie Center, Suite 102
   Services:                Princeton, NJ 08540
                         BY:BORIS BROWNSTEIN, ESQ.


   For the Defendant     SANDELANDS EYET, LLP
   Mr. Cooper, a/k/a     1545 US Highway 206, Suite 304
   Nation Star           Bedminster, NJ 07921
   Mortgage:             BY:MATTHEW EYET, ESQ.
```

MDL     RPR     CRR     CSR
225 Cadman Plaza East / Brooklyn, NY 11201
MLuccheseEDNY@gmail.com
Proceedings recorded by mechanical stenography; transcript produced by Computer-Aided Transcription.

Proceedings                                                        2

1           THE COURTROOM DEPUTY:  All rise.
2           THE COURT:  Good morning.
3           THE COURTROOM DEPUTY:  Manopla versus Experian,
4    Docket No. 19-CV-00992.
5           Counsel, please state your appearances starting with
6    the plaintiff.
7           THE COURT:  I am going to ask you to sit, Mr.
8    Geller, and talk into the mic so that the people on the phone
9    will be able to hear you.
10          MR. GELLER:  Appearing for the plaintiff, Morris
11   Manopla, is Edward Geller.
12          THE COURT:  And you are with your client?
13          MR. GELLER:  And my client, Morris Manopla is here
14   as well.
15          THE COURT:  Good morning, sir.
16          MS. TOBITSCH:  Good morning, Your Honor.  Appearing
17   on behalf of Experian.  I am Kerianne Tobitsch from the law
18   firm of Jones Day, and I have on the phone with me Abril
19   Turner, who is counsel for Experian.
20          THE COURT:  Good morning to you both.
21          MR. BROWNSTEIN:  Good morning, Your Honor.  Boris
22   Brownstein from Clark Hill on behalf of Equifax Information
23   Services and on the phone with me is Jordan Stinger.
24          MR. EYET:  Matthew Eyet on behalf of defendant, Mr.
25   Cooper, a/k/a Nation Star Mortgage.  And on the phone with me

1   I have Joan Osiemo, which is spelled O-S-I-E-M-O.  Thank you.
2              THE COURT:  Okay.  Thank you all for coming.  This
3   is a combined pre-motion conference and an initial status
4   conference in the case.  Let me start with Nation Star's
5   motion because I really don't understand how you establish
6   reasonableness as a matter of law on a motion to dismiss.
7              MR. EYET:  Understood, Your Honor.  And I would
8   agree with that, but I will mention, having gotten involved in
9   this case within the last few days, there is one issue I would
10  like to raise before the Court at this time and that is the
11  fundamental principal of the FCRA, there has to be inaccurate
12  reporting.  So, as alleged in the complained here, Mr. Manopla
13  said that there was inaccurate reporting in, we will call it
14  the spring of 2018.
15             MS. TURNER:  Is there someone speaking?  Because on
16  the phone we can't hear anything.
17             THE COURT:  You have to use one of the desk my
18  client's.
19             MR. EYET:  Is that better?
20             THE COURT:  Yes.
21             MS. TURNER:  Yes.  Thank you.
22             MR. STINGER:  Yes.  Thank you.
23             MR. EYET:  As I was saying earlier, inaccuracy is a
24  fundamental cornerstone of the FCRA.  In this case, Mr.
25  Manopla, he claims that there was inaccurate reporting, and we

Proceedings                                                                 4

1  will call it the spring of 2018; however, Nation Star's files
2  shows that Mr. Manopla signed a loan modification agreement on
3  June 29, 2018, which added new principal balance in the amount
4  of $93,000.  This is based on a delinquency that started
5  January 21st of 2016.
6            THE COURT:  I'm not getting it.  Are you abandoning
7  the ground that was stated in your letter, because this ground
8  was not?
9            MR. EYET:  Yes, Your Honor.
10           THE COURT:  Well, you can't do that.  I got
11 everybody here prepared to argue the points that you raised in
12 your pre-motion conference letter.
13           MR. EYET:  Understood.
14           THE COURT:  Mr. Geller, do you know what he's
15 talking about?
16           MR. GELLER:  This is the first I'm hearing of it,
17 Your Honor.
18           THE COURT:  Really.  What a waste of time.
19           MR. EYET:  Your Honor, if I may, I'm actually
20 raising this point to do just the opposite in this case.  To
21 the extent there was a loan modification, I think that's
22 pretty conclusive proof that there was a reason for negative
23 credit reporting.
24           THE COURT:  Yes, but this is a pre-motion conference
25 and the idea is both parties realize in advance of the

Proceedings                                                    5

conference what the other party is saying and can respond to it and do respond to it and then we can have a discussion about whether it is done or not.  For example, you say there is a loan modification.  Well, I'd like to know if there were documents supporting that.  I assume there are.  You are saying there was a loan modification.  Mr. Geller hasn't seen those documents.  He is not prepared to address them.

MR. EYET:  Understood.

THE COURT:  Mr. Geller, what is your hourly rate that is usually allowed?

MR. GELLER:  About $300 an hour.

THE COURT:  $300, pay him for coming and wasting his time this morning.

So I have a motion from Nationwide that I am going to allow, but we don't know how good it is.  How do you do that on a motion to dismiss?

MR. EYET:  Excuse me, Your Honor, I don't understand your question.

THE COURT:  What I am saying is your motion is confined to the face of the Complaint.  The Complaint does not allege a loan modification agreement and it alleges that, in fact, the report was inaccurate, which is presumed true on a motion to dismiss.  So how do you make the motion to dismiss?

MR. EYET:  It is possible that we could use public records from a foreclosure action that may have been

1  commenced.  That's possible.  In terms of, you know,
2  introducing that as an exhibit to a motion to dismiss,
3  obviously we would agree with the Court that that is not on
4  the face of the Complain and would not be allowable.  Perhaps
5  it can be converted into a motion for summary judgment at that
6  point.
7           THE COURT:  Why don't we all join hands and we will
8  try to contact the living, because I'm not sure anybody has
9  thought about the purpose of this conference today.  Are you
10 doing this on the fly?  Why didn't you send me a supplemental
11 letter when you came up with this new theory?
12          MR. EYET:  Your Honor, I reviewed this file last
13 night.
14          THE COURT:  That is always a good thing to do before
15 you go to court, review the file for the first time the night
16 before.  Look, if you want to move for summary judgment on
17 this ground now, you can.  The odds are high I am going to
18 deny it because there hasn't been any discovery into this loan
19 modification.  If you are going to file it, file it in two
20 weeks.
21          Now, as to Experian, it is again at least told to me
22 that it is a motion to dismiss or summary judgment, like you
23 are going outside the Complaint, you are going to need
24 additional facts, right?
25          MS. TOBITSCH:  So, we believe this could be heard on

Proceedings 7

a motion to dismiss based on just the documents that are incorporated.

THE COURT: A little closer to the mic.

MS. TOBITSCH: We believe this could be heard as a motion to dismiss based just on the documents that are incorporated by reference or integral to the Complaint, and those are the two dispute letters referenced by the plaintiff in the Complaint and also Experian's response letters, which in the Complaint it says that the plaintiff alleges that he did not receive those response letters. So we are saying that's either incorporated by reference or integral to the Complaint, which is an alternative way to consider documents.

We provided the ACDVs in the event that you want to convert this into a summary judgment motion, but our original application is for a motion to dismiss.

THE COURT: It is not really incorporated in the Complaint. The Complaint says there was no response, so showing that that allegation is inaccurate, that's not incorporated. That's proof to the contrary of allegations in the Complaint.

MS. TOBITSCH: But it is integral. And we cited case here from the Second Circuit talking about how when a document is integral to the plaintiff's allegations and its allegations cannot be determined in the absent of that document, then it's integral and can be considered on a motion

1   to dismiss.
2           THE COURT:  Isn't that a Second Circuit case where
3   the plaintiff pled the existence of the document in the
4   Complaint and that's why it was integral?
5           MS. TOBITSCH:  No.  So, he -- he basically what
6   happened is on a motion to dismiss, the defendant submitted an
7   affidavit attaching contracts that were integral to the
8   Complaint and the Court decided that it could not determine
9   the issue without actually considering the contract.  So the
10  allegations in that Complaint involved -- it was a copyright
11  dispute, so it involved digital assets, and the question was
12  whether or not the plaintiffs had signed over their rights to
13  those digital assets.  The Court had to look at the actual
14  contract to determine -- to look at the language and see
15  whether they transferred those rights.
16          THE COURT:  That is really kind of different than a
17  plain contradiction of an allegation in the Complaint, right?
18          MS. TOBITSCH:  Well, in this case, the Court won't
19  be able to determine the plaintiff's allegations against
20  Experian without looking at what Experian actually reported
21  back to him.
22          THE COURT:  I agree with you.  That is why we have
23  summary judgment.
24          MS. TOBITSCH:  Okay.  We would be fine if you want
25  to convert this into a motion for summary judgment.

1        THE COURT:  Yes, but then I am going to give them
2   some discovery to look at your files to see why they didn't
3   get these letters and make sure there isn't anything else
4   aside from what you have determined to annex to your motion.
5        MS. TOBITSCH:  Yes.  And we would be fine if we had
6   discovery on that point.  I actually already provided the
7   correspondence to Mr. Geller on March 22nd in and attempt to
8   resolve this dispute with him.  I already Bates stamped it and
9   provided him the correspondence and the ACDV's.  What I
10  provided you on ECF are actually the redacted versions, but
11  Mr. Geller has the full versions.  If he wants anything else
12  from the file, we would be happy to provide them to him by the
13  end of this week.
14       THE COURT:  Well, I think the only chance you have
15  is if you give him the entire file with an affidavit saying
16  this is the entire file.
17       MS. TOBITSCH:  We can do that.
18       THE COURT:  Try this.
19       MS. TOBITSCH:  His file only consists of the two
20  dispute letters that we are addressing.  He actually already
21  has them, but I can get an affidavit from my client.
22       THE COURT:  Put that in on a summary judgment
23  motion.  Don't make it a motion to dismiss.  Let's dodge that
24  issue.  And if Mr. Geller thinks he needs additional discovery
25  to answer the motion for summary judgment, he will tell me

1  that in opposition to the motion.
2          MS. TOBITSCH:  Okay.
3          THE COURT:  And then I will make a determination
4  either he does or doesn't.  If he does, I will either hold the
5  motion or deny it without prejudice to renewal after
6  discovery.
7          I would encourage all the defendants, to the extent
8  we are going to have motion practice, it sounds to me like it
9  is summary judgment motion practice and you ought to try to
10 reach an agreement with Mr. Geller once you outline for him
11 what the grounds are you are going to move on, that let's him
12 know that you have given him the entire universe of documents
13 that might relate to the point you are making so at least
14 there is a chance of convincing me that you don't need any
15 more discovery than that.  Let's start there.
16         Let's have the motions in two weeks, opposition in
17 two weeks, reply a week after that.  And I don't know that I
18 want to do anything more at this conference until I see what
19 is coming.
20         Does that sound okay to everybody?
21         MR. GELLER:  Yes, Your Honor.
22         MS. TOBITSCH:  Yes, Your Honor.
23         MR. EYET:  To the extent we decide not to file a
24 motion, what would be the due date for an answer?
25         THE COURT: Two weeks.  Anything else we need to

1  cover this morning?
2          MR. GELLER:  Nothing from plaintiff, Your Honor.
3          THE COURT:  Okay.  I would ask Nation Star, when you
4  pay the $300 to Mr. Geller, just file a letter on the docket
5  here noting that you have done so so I know that has been
6  satisfied.  Please do that within seven days.
7          Anything else?  Thank you.  We are adjourned.
8          MR. GELLER:  Thank you, Your Honor.  Thanks.
9          (Matter concluded.)