```
 1   UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
 2
     ------------------------------x
 3                                              19-CV-992(BMC)
     MORRIS MANOPLA,
 4                                              United States Courthouse
              Plaintiff,                        Brooklyn, New York
 5
              - versus -                        September 04, 2019
 6                                              10:15 a.m.
     EXPERIAN, et al.,
 7
              Defendants.
 8
     ------------------------------x
 9
              TRANSCRIPT OF CIVIL CAUSE FOR ORAL ARGUMENT
10              BEFORE THE HONORABLE BRIAN M. COGAN
                    UNITED STATES DISTRICT JUDGE
11

12   APPEARANCES

13   Attorney for Plaintiff:   EDWARD B. GELLER, ESQ. PC
                               15 Landing Way
14                             Bronx, New York 10464
                               BY:  EDWARD GELLER, ESQ.
15
     Attorney for Experian:    JONES DAY LLP
16                             250 Vesey Street
                               New York, New York 10281
17                             BY:  KERIANNE TOBITSCH, ESQ.

18   Attorney for Equifax:     CLARK HILL PLC
     (via telephone)           830 Third Avenue
19                             New York, New York 10032
                               BY:  JONATHAN DANIEL KLEIN, ESQ.
20

21
     Court Reporter:           RIVKA TEICH CSR, RPR, RMR, FCRR
22                             Phone:  718-613-2268
                               Email:  RivkaTeich@gmail.com
23
     Proceedings recorded by mechanical stenography.  Transcript
24   produced by computer-aided transcription.

25
```

ORAL ARGUMENT

1           (In open court.)

2           THE COURTROOM DEPUTY:  All Rise.  Manopla V.
3  Experian, et al, 19-CV-992.

4           Counsel, state your appearances.

5           MR. GELLER:  Appearing for plaintiff Morris Manopla,
6  Edward Geller, of counsel Edward B. Geller, Esq., PC.

7           THE COURT:  I don't know why you keep saying that.
8  As far as I'm concerned, you're the attorney.  I don't know
9  who Harvey Rephen is.  You're the lawyer, right?

10          MR. GELLER:  Yes, your Honor.

11          THE COURT:  That's all I care about.  Welcome.

12          MS. TOBITSCH:  Good morning, your Honor, I'm
13  Kerianne Tobitsch from Jones Day.  I represent Experian.

14          THE COURT:  Okay.  Who is the on the phone?

15          MR. KLEIN:  Good morning, your Honor.  Jonathan
16  Klein for Equifax.

17          THE COURT:  Okay.  Why is no one here for TransUnion
18  or Nationstar?

19          MR. GELLER:  Your Honor, plaintiff reached a
20  settlement with TransUnion.

21          THE COURT:  That's explained that.

22          How about Nationstar?

23          MR. GELLER:  I have not heard from them, your Honor.

24          THE COURT:  What does that mean?

25          MR. GELLER:  Since our last appearance I have not

ORAL ARGUMENT

heard from them in any way.  They have not --

THE COURT:  You haven't settled though.

MR. GELLER:  No.

THE COURT:  But you have served them.

MR. GELLER:  Yes.

THE COURT:  Have they acted?

MR. GELLER:  Yes.

THE COURT:  They just didn't show up for today, okay.

We're here on Experian's motion for summary judgment.  I have to say, neither side was all that helpful to me in giving me what I need to figure out this case.  And I think the answer, one way or another, is very straight forward.

What I believe happened is that plaintiff went into default on his mortgage with Nationstar, now called Mr. Cooper -- which is strange to me, but that's okay.  And he did a work-out.  He did a plan whereby he would bring himself current over a period of months.

Now how do I know that.  Well, that's because I have looked at Exhibit 3 to the Experian affidavit of Anna Simmons.  And within that Exhibit 3 there is a document, and no one has told me what it is, and just below the first half of the document there is a comment by somebody, but I don't know who, that says, 'paying under the partial payment agreement.'  And

1  there is some other notation -- right above that it says, 'by
2  October 22 this account is scheduled to go to a positive
3  status.'.
4             So from those entries what I infer is that the
5  plaintiff became delinquent in his mortgage.  He talked to
6  Nationwide (sic), Mr. Cooper -- Nationstar, Mr. Cooper, and
7  worked out a payment plan that would bring him current by
8  October.  And then he probably got current by October.  I
9  don't know, no one has told me, but I assume he got current.
10            So the only question before us is as to the
11 reporting between I think December or January, when he went
12 into default, and October when he came out of default.
13            Now, I'm drawing a lot of inferences there and I
14 can't draw inferences in support of the defendant on summary
15 judgment.
16            But Mr. Geller, I will tell you, that if all that is
17 going on here was that your client thinks he shouldn't have
18 been booked as delinquent because he had an agreed payment
19 plan, I think that's wrong.  I think they still show the debt
20 as in default until he completes the payment plan, in which
21 the case, the reporting would have been perfectly accurate by
22 everybody.  Because he was 180 days in default until he caught
23 up, whether that was March or April or what, I don't know.
24            Then, Mr. Geller, your guy tells me, well, I had
25 documents showing what was going on, but I threw them away

1  because I didn't know I'd need them for this case.  That's my
2  problem with the plaintiff's case and the defendant's case,
3  because the defendant hasn't told me any of the things that I
4  just said.
5            The main problem I have with the defendant's case
6  is, why didn't you get the Nationwide statements?  Nationwide
7  is a party to the case.  If you gave me the Nationwide
8  statements and they showed him as delinquent, you're off the
9  hook.
10           MS. TOBITSCH:  Your Honor, I can answer that for
11 you.  So we actually asked Nationstar for the documents before
12 we filed the motion, and they didn't produce the documents.
13 We didn't have enough time to go through formal discovery
14 before we filed the motion.
15           THE COURT:  Come one, how much time could it take?
16 You send a letter to Nationwide.  You say, punch the button
17 and give me the account file on this guy.
18           MS. TOBITSCH:  We requested the documents, but I
19 think they would have had 30 days to respond and --
20           THE COURT:  Why did you request so late?
21           MS. TOBITSCH:  So I think we only had a couple of
22 weeks after the premotion conference to file the motion for
23 summary judgment.
24           THE COURT:  Why didn't you come to me and ask me to
25 shorten the period because you need these for your motion?

ORAL ARGUMENT

1    MS. TOBITSCH:  So what you're talking about today,
2  that goes to an element of inaccuracy, which is a separate and
3  independent element.
4    THE COURT:  I know, but it's the easiest way out of
5  the case.  Why charge your client extra money to give me an
6  ACDV, which I don't know what that is, you don't explain it to
7  me, when if you just give me the pile of mortgage statements
8  we'll all know what happened here.  It's the easiest way,
9  cheapest way.
10    Just write me a letter saying, Judge, Mr. Cooper
11  needs to give us a statement.  I'll say, Mr. Cooper, three
12  days, push the button on the computer, give them the
13  statements.  Then we know if my hypothetical about the
14  deferred payments plan is correct.
15    Sure sounds like it's correct.  I don't know if
16  either of you have any other way to read this notation on this
17  document.  But 'paying under a partial payment agreement, open
18  126,000 past due as of March 2018, scheduled to go to a
19  positive status by October 22,' that sounds to me like a
20  payment plan.
21    MS. TOBITSCH:  Yes, that's correct.  So in our
22  reinvestigation, an ACDV is an Automated Credit Debit Verdict
23  form, a standard form used by the consumer reporting agencies.
24  Nationstar was the one that reported that there was the
25  partial payment agreement.

ORAL ARGUMENT

1    THE COURT:  Look, maybe it's because you're
2 comfortable with these forms that you assume I am, but I have
3 no idea how this form gets generated, what it says.
4    Let's look at one of these ACDV forms.  The first
5 one next to Ms. Simmons' affidavit.  Exhibit 1 -- sorry
6 Exhibit 2, first page.
7    MS. TOBITSCH:  Okay.  So here we have -- so this one
8 actually --
9    THE COURT:  First of all, who generates this form?
10 You haven't told me that.
11    MS. TOBITSCH:  So it's a consumer reporting agency,
12 like Experian, sends it to the furnisher of credit.  Once
13 Experian received the consumer dispute, it generated this form
14 with the information for the furnisher to verify.
15    THE COURT:  Which information on here is generated
16 by Experian and which information is generated by the
17 creditor?
18    MS. TOBITSCH:  So in the middle, the middle column,
19 on profile, that's the information that's on profile for
20 Experian.
21    THE COURT:  Hang on for a second.  Where does it say
22 on profile?
23    MS. TOBITSCH:  Directly in the middle of the page.
24    THE COURT:  I see that.
25    MS. TOBITSCH:  Okay.

ORAL ARGUMENT

1    THE COURT: First let me ask, under the remarks we
2 have the name of the consumer, and we have subscriber consumer
3 ID, and those both have the plaintiff's names. What does that
4 mean, consumer identification and subscriber consumer ID?
5    MS. TOBITSCH: So the consumer identification,
6 that's the identification information for the consumer that
7 Experian has. So they have his name, his Social Security
8 number, his date of birth and current address. Then the
9 subscriber is letting us know he has the name Morris Manopla.
10   THE COURT: How is the subscriber letting you know
11 that? There is only one form here.
12   MS. TOBITSCH: He's responding. Under subscriber
13 consumer ID, he's providing the information that he has, which
14 is Morris Manopla. They don't provide anything different for
15 Social Security number or DOB, which means they have the same
16 information.
17   THE COURT: Stop right there. How do the words get
18 on the paper? I understand Experian puts the words: Name,
19 Morris Manopla. How does the subscriber consumer ID get on
20 the same piece of paper that Experian at one point had in its
21 possession?
22   MS. TOBITSCH: This piece of paper you're referring
23 to, this is sent electronically. They fill-in their response
24 to the form.
25   THE COURT: And they fill-in electronically.

1    MS. TOBITSCH:  Yes.

2    THE COURT:  They hit send, it comes back to you.

3    MS. TOBITSCH:  Yes.

4    THE COURT:  Okay.  Now let me ask you this, I might
ask you a few more times, how am I supposed to know that?

6    MS. TOBITSCH:  I apologize, your Honor, for not
making that clear.  I think we -- the reason why we had --
first we weren't going to include these, but the reason we
included them was just to show the fact that this form was
actually sent and completed.  Because one of the claims in the
complaint was that Experian did not conduct a reinvestigation.
So we attached to this to our motion and it appears that the
plaintiff dropped that argument in its opposition because it
doesn't address that argument.

15   So we weren't -- we didn't intend for you to -- I'm
happy to walk you through anything you want.  The reason we
attached it was to address the point that an investigation had
not been completed.

19   THE COURT:  Because, according to the plaintiff, he
never got whatever it was that was generated between you and
Experian, even though your position is you sent it.

22   MS. TOBITSCH:  So the consumer does not receive the
ACDV.  The consumer receives what is in Exhibit 3, which are
the results of the reinvestigation.  And we know that
Mr. Manopla received them, because first of all, we have it in

1  our records which is why we're attaching it; but Mr. Manopla
2  had two in his records, which is why he attached it to his
3  affidavit.
4              THE COURT:  Okay.  So we know that in fact he did
5  receive the results of your ACDV once it was completed by you
6  and Nationwide, right?
7              MS. TOBITSCH:  Yes, because he attached.  We sent to
8  it him, which our records reflect.  And his records reflect
9  that he received it, since he attached copies.
10             THE COURT:  Let's move down the page of the same
11 ACDV.  I think it's a very relevant document, I just don't
12 know how you expect me to make a ruling based on, without
13 knowing what it is.
14             MS. TOBITSCH:  Sure.
15             THE COURT:  So under subscriber response, that's
16 Nationwide's response.  I should assume everything in this
17 column Nationwide filled in.
18             MS. TOBITSCH:  Correct, under subscriber response.
19 If we have information on profile and they don't address, it's
20 blank, it means they don't have different information than
21 what we have on file.
22             THE COURT:  On profile, which you started with, that
23 means what?  Who does that column?
24             MS. TOBITSCH:  Experian fills that out with the
25 information it has on profile for the consumer.

1    THE COURT:  Which comes first, the on profile or the
2    subscriber response?
3    MS. TOBITSCH:  The on profile.
4    THE COURT:  Shouldn't it be on the left and the
5    subscriber response on the right, just like it is on the
6    earlier boxes?
7    MS. TOBITSCH:  It might be easier to read that way,
8    but I don't know, it's an industry standard form, one that
9    everybody uses.
10   THE COURT:  Not me.  I will ask you again,
11   rhetorically, how could you expect me to know that?
12   I think it is a very important because it does show
13   that you asked Nationwide what was going on, and they told you
14   exactly what was in their credit file and had been on your
15   credit report for the consumer, and they match.
16   MS. TOBITSCH:  Uh-huh.
17   THE COURT:  And that's your investigation.  And what
18   more do you have to do to if they are telling you that's what
19   our records show.  It's important, but I'm not sure I can
20   grant you summary judgment based on your oral explanation of
21   what it is when I have no evidence in front of me as to what
22   it is.  Now I understand the form.
23   So assuming, Mr. Geller, that I keep the record open
24   for a supplemental affidavit that tells me everything that
25   Ms. Tobitsch just told me, by someone with knowledge and under

1  oath, so I understand what it means, forgetting about the
2  deferred payment plan that I think is behind all of this, what
3  is problem?
4        MR. GELLER:  The problem, your Honor, is that as
5  cited in plaintiff's memorandum of law relying on an ACDV is
6  not sufficient to show that Experian did what they were
7  required to do under the FCRA.
8        THE COURT:  What more should they do?
9        MR. GELLER:  They were notified by Mr. Manopla that
10 he was disputing this matter.  He said he had never been late.
11 At the very least, they should have requested documentation I
12 think from the bank showing where he was late.  I have a
13 letter here from Mr. Manopla saying he's never been late
14 and --
15       THE COURT:  But then think of what you're asking.
16 Obviously they are questioning Nationwide, because they've got
17 some expression from the consumer disputing it.  They don't
18 routinely go to Nationwide and say, 'is this right.'  They get
19 the data, they compile it with the consumer's reports.  And
20 then they only go back to the creditor if the consumer has
21 disputed it.
22       So we know there is a dispute.  Experian knows there
23 is a dispute.  It reaches out and says, effectively, to
24 Nationwide, double check this because -- they don't say
25 because the consumer is disputing -- but there is no other

1  reason.  Nationwide comes back and says the information is
2  right.
3          Now at that point what you're suggesting is that
4  Experian has an obligation to adjudicate the dispute and find
5  out who is right here, Nationwide or the plaintiff.  They
6  can't do that.  I can barely do that.
7          MR. GELLER:  I don't think they are being asked to
8  adjudicate the dispute.  I think they are simply being asked
9  to take into account the information and the evidence that
10 Mr. Manopla provided to them.
11         THE COURT:  What did he give them?
12         MR. GELLER:  He sent them -- well --
13         THE COURT:  That we don't, have he sent them
14 statements that we don't have.
15         MR. GELLER:  Showing that he had been making
16 payments about monthly, on time, he was never delinquent.
17 Also as he mentions in his affidavit he at one point he placed
18 a phone call to the bank and asked if he was ever late.  And
19 there is a recording of the phone call.  They said, no, your
20 account has always been current.
21         THE COURT:  What is Experian supposed to do with
22 that?  They don't have the phone call.  Are they supposed to
23 have a human being call up Nationwide and say, do you have a
24 recording?  Are they supposed to do what I think they should
25 have done in this action, which is get a copy of the

1  statements?  How much do they have to do before they take a
2  side between a disputing consumer and his creditor?
3             MR. GELLER:  Your Honor, I think they have to do
4  more than they did in this case.
5             THE COURT:  You have to tell me what, because "more"
6  doesn't say anything.
7             MR. GELLER:  I understand.  As a result of the
8  incorrect information on his credit report, Mr. Manopla was
9  denied a loan.
10            THE COURT:  I'm assuming damages.  Forget about
11 damages, there has to be liability first.  What happens is he
12 writes them a letter.  It says, here is an item that is in
13 dispute, the Nationstar mortgage.  And then all he says about
14 it in the first letter is these loans were never late.  He
15 doesn't say he's enclosing anything in the first letter.
16            So they contact and Nationwide tells them, No,
17 that's right, that's correct.  They send your client the usual
18 response that says we checked it out.
19            They show internally that they found out somehow --
20 Ms. Tobitsch hasn't told me how -- that there is a deferred
21 payment agreement going on.  I don't know how that happened.
22            And then we have the second letter, and again it
23 says I'm not late on this mortgage.  It doesn't say he's
24 enclosing anything.  Where does it say he's enclosed his
25 financial statements?

1   MR. GELLER: I think in the letter --

2   Which letter?

3   THE COURT: Either one. Neither one says attached

4   please find the statement.

5   MR. GELLER: On the bottom he says last paragraph,

6   'As you can see from my credit history I have never been late

7   with credit cards.'

8   THE COURT: Wait a minute. The way I read that, the

9   way anybody would read that, is, Experian, look at your own

10  report you'll see this is the first late notation you've ever

11  made. He has is not saying enclosed please find the mortgage

12  statements that show that I'm current.

13  MR. GELLER: I understand. Perhaps he could have

14  been more expressive in the letter. I won't doubt that, your

15  Honor.

16  THE COURT: It's more than that. Look, As you can

17  see from my credit history, I've never been late with any

18  credit cards.' Well, this is not a credit card. He's just

19  saying, I've got a good credit history and you ought to infer

20  from that that I'm telling the truth. He's not saying what he

21  says in his affidavit that I enclosed mortgage statements

22  which showed in fact that I was not delinquent on this

23  account. That's something that appears for the first time in

24  his affidavit.

25  And if indeed the mortgage statements, which he says

1   he included in his affidavit not in his letters but in his

2   affidavit, show that in fact he was late and they did a

3   deferred payment plan and that his affidavit is false,

4   Mr. Geller, there are going to be consequences to your client

5   because he made up a case.

6           MR. GELLER:  I understand, your Honor.

7           THE COURT:  So I'm going to reserve decision on this

8   motion.

9           I want to see the mortgage statements.  I want to

10  see if the plaintiff was telling me the truth when he put in

11  an affidavit saying, I enclosed mortgage statements, even

12  though his letters say nothing about enclosing any mortgage

13  statements.  I want to see what those mortgage statements are.

14          Ms. Tobitsch, I don't think I need to tell you what

15  the procedure is for getting those statements if Mr. Cooper is

16  uncooperative.

17          MS. TOBITSCH:  Yes, your Honor.

18          THE COURT:  I won't hesitate to hold somebody in

19  contempt if they don't meet a discovery obligation.  Let's get

20  those statements, find out if the plaintiff is telling the

21  truth that he's never been late, and then we can talk about

22  whether Experian had an obligation to get involved in

23  adjudicating the dispute and deciding who is more likely to be

24  right; which frankly, Mr. Geller, I just can't believe the

25  FCRA requires that.

1                Like I said, I'm having a hard time figuring out who
2   did what here, and I have the power of law.  Experian has
3   nothing, they can just ask.
4                I want those documents in two weeks.  I think it
5   will shed some light on where we should go next.
6                Mr. Geller, you should talk to your client whether
7   he's sure he enclosed those mortgage statements.  And whether
8   in fact he entered into a deferred payment plan.  Because I
9   think what he's really saying in his letters is you shouldn't
10  list me as late anymore because I've got a deferred payment
11  plan, and as long as I stick to it they are going to take off
12  the late payment notation by October.  That's what I think
13  happened.  Your client didn't tell me any of that in his
14  affidavit.  It makes the case entirely different.
15               MR. GELLER:  I understand, your Honor.
16               THE COURT:  Let's see what we can do.  Please make
17  an additional filing in the next two weeks.  Defendant first,
18  it will be a supplemental submission in support of their
19  summary judgment motion.
20               Ten days later I want any reply, if there is a reply
21  from the plaintiff.
22               Anything else we can do today?
23               MR. GELLER:  Nothing from plaintiff.
24               THE COURT:  Ms. Tobitsch?
25               MS. TOBITSCH:  Nothing else, thank you.

ORAL ARGUMENT

1       THE COURT:  Thank you all on the telephone.

2       MR. KLEIN:  Thank you, your Honor.

3       (Whereupon, the matter was concluded.)

4              *    *    *    *    *

5  I certify that the foregoing is a correct transcript from the
   record of proceedings in the above-entitled matter.
6

7

   Rivka Teich, CSR RPR RMR FCRR
8  Official Court Reporter
   Eastern District of New York